## TUTTLE'S CASE

### Waldo.   Opinion September 3, 1927.

*The work of constructing third class highways in distinction from state and state aid highways is governed by section 4 of chapter 263, P. L. 1919 as amended by chapter 169 P. L. 1925, which expressly provided that when a town has qualified itself to receive funds, the municipal officers shall proceed with the construction of the way.*

*That it must be constructed according to standards approved by the state highway commission does not make the state highway commission a contracting party with respect to the materials and labor furnished in constructing the highway.*

In the instant case, the evidence is plenary that the deceased was in fact employed by the city of Belfast.

On appeal.   Petition of the alleged dependant widow of William Tuttle, who was killed in a gravel pit in the city of Belfast while engaged in the construction of a third-class highway.   The only question involved was as to whether deceased was in the employ of the city of Belfast or of the State Highway Commission at the time of the accident.   Compensation was awarded under section 12 of the Workmen's Compensation Act to be paid by the city of Belfast, and an appeal was taken.   Appeal dismissed with costs.   Decree below affirmed.

The case appears in the opinion.

*Clyde R. Chapman,* for petitioner. .

*Charles S. Taylor,* for the city of Belfast.

*Franklin Fisher,* for the State Highway Commission.

SITTING:   WILSON, C. J., PHILBROOK, DEASY, STURGIS, BARNES, JJ.

WILSON, C. J.   The petitioner's husband was killed while engaged in the construction of a third-class highway in the city of Belfast.   The associate legal member of the Industrial Accident Commission found that the deceased, when killed, was in the employ of

the city of Belfast, and that his injuries arose out of and in the course of his employment.

The city of Belfast appealed from the decree based on this finding, upon the ground that the deceased was not an employee of the city of Belfast but of the State of Maine.

The appeal can not be sustained. Not only was the deceased in fact hired and paid by the city of Belfast, but the work of construction of the third-class highway in question, so far as the record in the case shows, was properly being done by the city.

The work of construction of third-class highways in distinction from state and state aid highways is governed by section 4 of chapter 263 P. L. 1919 as last amended by chapter 169 P. L. 1925, which expressly provides that when a location of a third-class highway has been approved—assuming, of course, that the town in which it is located is entitled to receive funds from the state for the purpose—the municipal officers shall proceed with the construction of the highway in conformity to the provisions of section 5 of chapter 263 P. L. 1919, as amended, which provides that it must be constructed according to certain standards approved by the state highway commission. Only in case the municipal officers can not agree upon a designation of a third-class road shall the state through its highway commission make such designation and proceed with the construction. Section 4 chapter 169 P. L. 1925.

There is abundant evidence upon which the associate member of the commission may have based his finding that the city of Belfast employed and paid the workmen engaged in the construction of the highway, in connection with which the deceased received his injuries.

The apportionment of the mill tax by and its expenditure under the supervision of the state highway commission in accordance with the provisions of section 3 of chapter 263 P. L. 1919 as amended does not involve the actual construction of such highways by the state; but is entirely consistent with a construction by the town or city in which the way is located subject to the approval of the commission, and the payment directly to the town of its share of the mill tax following the work of construction when it has been approved by the highway commission.

*Appeal dismissed with costs.*
*Decree below affirmed.*